UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JENNIFER MORA, *etc.* | Case No. 8:18-cv-335 |
| Plaintiff | Judge James S. Moody, Jr. |
| *v.* | |
| VISIONWORKS OF AMERICA, INC. | |
| Defendant | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff Jennifer Mora moves for class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) to pursue on a class-wide basis her consumer-protection claims against Defendant Visionworks of America, Inc. A memorandum setting forth the proposed class definition, as well as the points and authorities in support of this motion, follows.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii
INTRODUCTION ...................................................................................................................... 1
STATEMENT OF THE CASE .................................................................................................. 2
    I.     PRIOR RELATED LITIGATION ................................................................... 2
    II.    PLAINTIFF'S LIABILITY THEORY ............................................................. 2
    III.   PLAINTIFF'S DAMAGES THEORY .............................................................. 4
STATEMENT OF FACTS ......................................................................................................... 6
LAW & ARGUMENT ................................................................................................................. 8
    I.     PROPOSED CLASS DEFINITION ................................................................. 8
          A.    The Class Is Adequately Defined and Ascertainable. .......................................... 8
          B.    The Plaintiff Is a Member of the Class with Standing to Pursue The Class Claims .......... 9
    II.    RULE 23(A) REQUIREMENTS .................................................................... 10
          A.    The Class Is So Numerous that Joinder Is Impracticable. ................................ 10
          B.    The Case Involves a Common Question or Law or Fact. ................................ 10
          C.    Mora's Claims Are Typical of Class Members' Claims. .................................. 11
          D.    Mora and Her Counsel Will Adequately Represent the Class's Interests. ....... 12
    III.   RULE 23(B)(3) REQUIREMENTS ................................................................ 13
          A.    A Common Question of Law or Fact Predominates. ....................................... 13
          B.    Class Litigation Is Superior to Individual Adjudications. ................................ 14
CONCLUSION ......................................................................................................................... 15
PROOF OF SERVICE ............................................................................................................. 16

# **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997) ............................................................13, 15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 460 (2013) ...........................1, 4, 13

*Armstead v. Pingree,* 629 F. Supp. 273, 279 (M.D. Fla. 1986) ......................................................10

*Blair v. Wachovia Mortg. Corp.,* 2012 U.S. Dist. LEXIS 33941, at *6 (M.D. Fla. March 14, 2012) ......................................................................................................................8

*C-Mart, Inc. v. Metro. Life Ins. Co.,* 299 F.R.D. 679, 687, 691 (S.D. Fla. 2014) .......................9, 13

*Comcast v. Behrend,* 133 S. Ct. 1426 (2013).................................................................................14

*Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156 (1982) .............................................................12

*In re Carbon Dioxide Antitrust Litig.,* 149 F.R.D. 229, 232 (M.D. Fla. 1993) ...............................8

*Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997)................................13

*Karhu v. Vital Pharm., Inc.,* 621 F. App'x 945, 947 (11th Cir. 2015) .............................................9

*Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 725 (11th Cir. 1987) ..................................1, 13

*Klay v. Humana,* 382 F.3d 1241, 1269, 1273 (11th Cir. 2004) ......................................................14

*Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) .........................11

*Little v. T-Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012).................................................9

*London v. Wal-Mart Stores,* 340 F.3d 1246, 1253 (11th Cir. 2003)...............................................12

*Nelson v. Mead Johnson Nutrition Co.,* 270 F.R.D. 689, 698 (S.D. Fla. 2010) ............................14

*Poteat v. Visionworks of America, Inc.,* N.D. Ohio Case No. 1:15-cv-02306 (Aug. 8, 2017) ..........................................................................................................................2

*Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000) ..............................12

*Reyes v. BCA Fin. Servs.,* 2018 U.S. Dist. LEXIS 106449, at *42 (M.D. Fla. June 26, 2018) .........................................................................................................................13

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1183-84 (11th Cir. 2010) .......................................................................................14

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398 (2010).....................8

*Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1268 (11th Cir. 2009) ........................................10, 15

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2531 2251 (2011) .............................................1, 10, 11

*Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009).......................................11

**Statutes**

Fla. Stat. § 501.204 ................................................................................................................... 1, 4

Fla. Stat. § 95.11(3)(f) ............................................................................................................... 8

**Regulations**

16 C.F.R. § 251.1(a)(1)-(2), (b)(1)-(2), (h), (i) ................................................................. 1, 2, 4, 8

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................ 8, 10

Fed. R. Civ. P. 23(b)(3) ........................................................................................................ 8, 13

**Treatises**

Manual for Complex Litigation (Fourth) § 21.141 ..................................................................... 11

## INTRODUCTION

The central question in this litigation is whether, in connection with its sale of eyeglasses in Florida, Visionworks used the word *free* for more than six months during any twelve-month period and/or without 30 days between such offers. *See* Complaint (Doc. 1), ¶¶3-4, 28; *accord* Amended Complaint (Doc. 26), ¶¶4-5, 28; *see also* Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Chapter 501, Part II (the "Florida Act") (to determine whether a practice is "unfair or deceptive ... due consideration and great weight shall be given to the interpretation of the Federal Trade Commission"); 16 C.F.R. 251.1(h) (the "FTC Rule") (prohibiting retailers from using the word *free* in offers for more than six months during any twelve-month period and requiring at least 30 days between such offers).

If the answer to this key question is **yes**, then Visionworks violated the FTC Rule and the Florida Act, and every consumer who purchased eyeglasses under the "free" offer would be entitled to relief. And if the answer to the main question is **no**, then Visionworks complied with the FTC Rule and the Florida Act, and every consumer's claim would falter. Thus, the resolution of this critical question will advance the litigation for all Florida consumers "in one stroke," *see Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2531 2251 (2011), such that all class members will "prevail or fail in unison." *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 460 (2013).

The question at the heart of this case will be answered based on evidence that will not vary from consumer to consumer: Visionworks executed one unified sales and marketing plan across the state of Florida related to its "Buy One, Get One Free" (BOGO-Free) offers. *See* Exhibit 1, Declaration of Drew Legando, ¶¶5-6. (Visionworks ran the same BOGO-Free offers in all Florida markets at the same times). Whether or not Visionworks violated the FTC Rule and the Florida Act by running BOGO-Free ads more than six months per year or without 30-day breaks between such offers will be proven by the same evidence regardless of consumer. Therefore, class certification is "particularly appropriate." *Cf. Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 725 (11th Cir. 1987).

1

## STATEMENT OF THE CASE

### I. PRIOR RELATED LITIGATION

Beginning in 2014, plaintiffs in Ohio and Illinois began challenging Visionworks' use of BOGO-Free offers, alleging that the frequency and duration of the offers violated state consumer protection laws. After years of extensive litigation, Visionworks chose to settle those claims—but only for Ohio and Illinois classes. *See Poteat v. Visionworks of America, Inc.,* N.D. Ohio Case No. 1:15-cv-02306, Doc. 68 (Final Approval Order) (Aug. 8, 2017) (issuing final approval over class action settlement and certifying for settlement purposes Ohio and Illinois classes).

When Jennifer Mora learned about the settlement on the internet, but that she could not participate in it because she was a Florida consumer, she contacted counsel from the *Poteat* case and ultimately filed this action. *See* Exhibit 2, Deposition of Jennifer Mora, pp. 18-21, 89-90.

### II. PLAINTIFF'S LIABILITY THEORY

Mora alleges that Visionworks repeatedly used long-running BOGO-Free offers in a manner that violated the FTC Rule and therefore the Florida Act. *See* Amended Compl. at ¶5. The FTC Rule, 16 C.F.R. § 251.1, provides as follows:

> (a)(1)  The offer of "free" merchandise of service is a promotional device frequently used to attract customers ... found to be a useful and valuable marketing tool.
>
> (2)  Because the purchasing public continually searches for the best buy, and regard the offer of "Free" merchandise or service to be a special bargain, all such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived....
>
> (h)  <u>So that a "Free" offer will be special and meaningful</u>, a single size of a product or a single kind of service should not be advertised with a "Free" offer in a trade area for <u>more than 6 months in any 12-month period</u>. At least <u>30 days should elapse before another such offer</u> is promoted in the same trade area. <u>No more than three such offers should be made in the same area in any 12-month period</u>. In such period, the offeror's sale in that area of the product in the size promoted with a "Free" offer should not exceed <u>50% of the total volume of his sales</u> of the product, in the same size, in the area.

2

Mora alleges that Visionworks' BOGO-Free offer is not "special and meaningful." To the contrary, the company's internal emails describe the BOGO-Free offer as "our day-in-and-day-out offers ... a promo we use every day ... all year long." *See* Exhibit 3, Deposition of Emily-White Keating (Vice President of Marketing) under Rule 30(b)(6), Deposition Exhibit 10 (Email String VOA_035696–VOA_034598). Indeed, Visionworks has found its use of the word *free* to be a "useful and valuable marketing tool" that customers believe to be a "special bargain." The company testified that its study of its own marketing efforts has led it to conclude that the word *free* in its BOGO promotions is "a message that matters to consumers ... helping to drive sales." *See* Ex. 3, White-Keating Dep. at 17, 22, 61, 62.

Mora alleges that Visionworks violates one or more components of the FTC Rule, and she has discovered common evidence which would prove such violation for each and every Florida consumer. First, Visionworks ran its BOGO-Free offer for more than 6 months in any relevant 12-month period: for example, in 2015, the company ran the *free* offer for every single month, covering all but five weeks of the entire calendar year. *See* Ex. 1, Legando Decl. at ¶¶5-6. Second, Visionworks did not wait for 30 days to elapse between its *free* offers: in 2015, there were only three breaks in the offers, one for 20 days, a second for 6 days, and a third for 6 days. *Id.* Third, Visionworks made more than three *free* offers in Florida markets within any 12-month period: in 2015, the company made at least six such offers in print advertising alone (*i.e.,* repeatedly in the same medium). *Id.* Fourth, more than 50% of Visionworks' non-insurance sales were BOGO-Free purchases: in 2015, it was 57%.[1] *See* Exhibit 4, Report of Defense Expert Timothy Snail, Report Exhibit 6B.[2]

---

[1] The parties likely dispute whether or not the insurance sales are relevant to this analysis. In Plaintiff's view, the insured and non-insured markets are incomparable in this instance: not only is Visionworks' BOGO-Free offer incompatible with insurance, but consumers who are relying on insurance payments to purchase eyeglasses are making their buying decisions based on coverage and not on the retail pricing and discounts or offers made to the un-insured public. Defendants may have a different view. In any event, this would be a merits question and only relevant to class certification because *the answer to this question will be the same for every class member*—either the insurance sales are relevant to the BOGO-Free analysis or they are not, across the board.

[2] According to Snail's Exhibit, there were $36,984,563 in non-insurance sales in 2015, $21,164,512 of which were BOGO-Free transactions, which is 57% of the total.

These alleged FTC Rule violations constitute "unfair or deceptive acts or practices" under the Florida Act, and "[i]t is the intent of the Legislature that, in construing [that phrase], due consideration and great weight shall be given to the interpretations of the FTC...." Fla. Stat. § 501.204. Mora seeks to pursue her claims under the Act on a class-wide basis for all Florida consumers. *See* Amended Compl. at ¶¶26, 31-41. At this stage of the proceedings, the question is not whether Mora will ultimately prevail on her claims, but only whether or not the claims can be treated on a class-wide basis. *See Amgen Inc.,* 568 U.S. at 445-46 (court are granted "no license to engage in free-ranging merits inquiries at the certification stage").

### III.   PLAINTIFF'S DAMAGES THEORY

Mora alleges that, based on the alleged FTC Rule violations, Visionworks' list prices—*i.e.,* the prices it told customers were the ordinary, regular price for a single eyeglasses (one frame and a set of lenses)—were *inflated* under the BOGO-Free marketing scheme, such that (a) customers were paying *more* than the true regular price for the first eyeglasses, and (b) the second eyeglasses were not truly free. *See* Amended Compl. at ¶5. The FTC Rule, 16 C.F.R. § 251.1, provides as follows:

> (b)(1)   The public understands that ... an offer of "Free" merchandise or service is based upon a regular price for the merchandise or service which must be purchased by consumers in order to avail themselves of that which is represented to be "Free." In other words, when the purchaser is told that an article is "Free" to him if another article is purchased, <u>the word "Free" indicates that he is paying nothing for that article and no more than the regular price for the other</u>....
>
> (2)   <u>The term *regular* when used with the term *price*, means the price ... at which the seller or advertiser of the product or service has openly and actively sold the product</u> or service in the geographic market or trade area in which he is making a "Free" or similar offer in the most recent and regular course of business, for a reasonably substantial period of time, *i.e.,* a 30-day period....

Mora alleges that Visionworks' BOGO-Free list prices were not its regular prices for eyeglasses because the company did not "openly and actively" sell single eyeglasses at the list

4

prices for "a reasonably substantial period of time, *i.e.,* a 30-day period." In 2015, for example, a single eyeglasses was *virtually always* subject to some type of discount from the list price: 40% off for 27 weeks, clearance sales for 13 weeks, flat-price discounts for 9 weeks. *See* Exhibit 5, 2015 Promotional Calendar. Thus, there were just 3 weeks during the course of an entire year at which Visionworks sold single eyeglasses at its list price; this was neither a substantial period of time nor the 30-day period of the FTC Rule. Indeed, just 2% of all sales were at the list price. *See* Ex. 4, Snail Report at Ex. 6A.

      Mora further alleges that the true regular price of eyeglasses was 40% less than the BOGO-Free list price, such that she—and every other class member—*overpaid* for the first eyeglasses and did *not* receive the second eyeglasses for free. *See* Amended Compl. at ¶¶23-24. Mora has a strong evidentiary basis for this allegation—and one which is *common* to every class member: discovery in the *Poteat* litigation revealed that Visionworks often offered an alternative "40% discount" on one eyeglasses at the same time it was running the BOGO-Free offer; and that the discount offer was usually *unadvertised*. *See* Ex. 2, Mora Dep. at 93, 102 (this information came from the Ohio litigation). Indeed, internal corporate documents show that the single-eyeglasses "discount" offer was an alternative to the two-eyeglasses "free" offer that salespeople were to use if a customer was unwilling to pay the high BOGO-Free price. *See* Ex. 5, 2015 Promotional Calendar (the 40% off discount is described as *unadvertised* and is run alongside the BOGO-Free offer for 28 weeks); *see also* Exhibit 6, PPT Slide VOA_018205 (coupling the BOGO-Free offer with the "unadvertised single pair offer: 40% off complete pair"); Exhibit 7, Act Now Memo to Stores VOA_020178 (coupling BOGO-Free offer with "unadvertised offer, 40% off single pair"). Visionworks' Retail Promotional Strategy document describes the 40% offer as the company's "**standard one pair offer**" and the BOGO-Free as its "standard two pair offer"). *See* Exhibit 8, PPT VOA_018235. And Visionworks testified that its corporate policy was to attract customers using the word *free* in the BOGO, but to transition them to the "discount" single-pair offer if the BOGO price was too high to consummate a sale: "if a customer comes in the BOGO [but doesn't want to pay the BOGO price] they're going to

5

get moved into an offer that's a single pair offer," namely, the 40% discount. *See* Ex. 3, White-Keating Dep. at 164; *see also id.* at 49 ("For a customer who comes in and does not want two pairs of glasses, we have a single pair offer.").

Thus, Mora's theory of damages is simple and straightforward, and applies to every member of the proposed class: each customer who made a BOGO-Free purchase *overpaid* the regular cost of single eyeglasses, which is 40% less than the list price. The evidence Mora will use to show that the regular price is 40% less than the list price, as set forth above, is *common* to every member of the class, consisting entirely of corporate documents regarding the frequency of the "discount" offers and the relationship between them and the BOGO-Free offers.

## **STATEMENT OF FACTS**

Visionworks is a national eyeglasses retailer with a $50 million annual marketing budget. *Id.* at 25-26. The company has studied what advertising is effective, and has concluded that use of the word *free* in its BOGO promotions is "a message that matters to consumers ... helping to drive sales." *Id.* at 17, 22, 61-62. Therefore, Visionworks has used the word *free* in its sales marketing in print, on television, online, in direct mailings, in emails, and on signage at retail locations. *Id.* at 24, 26, 30, 32-34. The marketing is all corporately-designed and uniformly-executed. *Id.* at 82 (there is no difference between the BOGO-Free promotions crafted at corporate and their deployment in various states). To that end, Visionworks established comprehensive rules for its salespeople:

- Visionworks implemented a "Simplified Pricing" program to ensure "the implementation of one pricing strategy across the entire Visionworks retail network." *See* Exhibit 9, Pricing Overview Training VOA_018180–VOA 018181.

- Visionworks ensures that all stores "receive the same signage package" for BOGO-Free promotions. *See* Ex. 6, VOA_018205.

- Visionworks mandated a "Standard Operating Procedure" for "BOGO Discount Rules," which stated that "failure to adhere to company guidelines ... will result in disciplinary action, up to and including termination of employment." *See* Exhibit 10, SOP 4.46: Unlimited BOGO Discount Rules, VOA_020417.

6

- Visionworks periodically issued action plans to its stores in order to exercise precise control over the timing, content, and execution of its BOGO-Free offers. *See* Ex. 7, VOA_020178.

Visionworks' Training Department worked to guarantee uniform implementation of its universal sales rules relating to the company's use of the word *free* in its BOGO offers. *See* Ex. 3, White-Keating Dep. at 41. The training included directions for how to solicit in stores and over the phone, and included scripts to use to solicit customers using the word *free. Id.* at 42-43; *see also* Exhibit 11, How to Sell to the Unlimited BOGO Promotion, VOA_018114–VOA 018115. Most important, Visionworks testified that there is "no difference in what the [BOGO] offer is between one consumer and the next consumer." *See* Ex. 3, White-Keating Dep. at 74-75.

As set forth above (Statement of the Case § II), Visionworks ran BOGO-Free offers every month during 2015, weeks on end without a break between the offers. *See also* Exhibit 12, 2014 Promotional Calendar (50-out-of-53 weeks); *accord* Ex. 3, White-Keating Dep. at 49, 117 (acknowledging continuous and repeated usage). Visionworks produced all of its print ads used in the state of Florida. Although the company divided the state into about a dozen geographic "markets," it ran the *exact same* print ads on the *exact same* dates in *every* market. *See* Ex. 1, Legando Decl. at ¶¶4-6. There was no variation in the form or content of the offer in different parts of the state: every member of the proposed class received the exact same BOGO-Free offer.

Also, as set forth above (Statement of the Case § III), Visionworks did not regularly sell single eyeglasses at its BOGO-Free list prices. To the contrary, Visionworks regularly sold single eyeglasses at prices that were 40% less than its BOGO-Free list prices. This 40% "discount" was a corporate program, salespeople were uniformly trained to transition from the BOGO-Free offer to the single-pair 40% offer, and there was no variation in those offers from location to location or customer to customer. *See* Ex. 3, Marketing Emails (describing the BOGO-Free and 40% single-pair offers as "day-in-and-day-out offers ... we use every day ... all year long").

## LAW & ARGUMENT

Mora moves for class certification, which requires that she show that her proposed class is properly defined and satisfies the standards of Rule 23(a) and, in this instance, Rule 23(b)(3). *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398 (2010). When applying these standards, the Court should generally take the substantive allegations of the Amended Complaint as true and "resolve any doubts in favor of class certification." *In re Carbon Dioxide Antitrust Litig.,* 149 F.R.D. 229, 232 (M.D. Fla. 1993) (citations omitted).

### I. PROPOSED CLASS DEFINITION

Plaintiff Mora proposes certification of the following class:

> *All consumers who purchased eyeglasses from Visionworks in Florida pursuant to a "Buy One, Get One Free" offer between February 8, 2014, and February 27, 2016.*

*See* Amended Complaint at ¶26. Based on the evidence adduced through discovery, the class definition now includes firm dates that delimit the class period. The start date is four years prior to the filing of the original Complaint, which accords with the Florida Act's statute of limitations. *See, e.g., Blair v. Wachovia Mortg. Corp.,* 2012 U.S. Dist. LEXIS 33941, at *6 (M.D. Fla. March 14, 2012), *citing* Fla. Stat. § 95.11(3)(f) (four-year statute of limitations for actions arising from statutory liability). And the end date is February 27, 2016, because Visionworks changed its marketing the following day: some of its advertising substituted the phrase "Buy One, Get One *At No Additional Cost*" in place of "Buy One, Get One *Free*." *See* Ex. 1, Legando Decl. at ¶7. Although the FTC Rule does not allow retailers to avoid its reach by substituting phrases like "at no additional cost" for the word "free," *see* 16 C.F.R. § 251.1(i), Plaintiff Mora has chosen to limit her case to those offers which actually included the word "free." As such, every member of the proposed class is one who participated in an offer with the exact same language: "Buy One, Get One *Free*."

### A. The Class Is Adequately Defined and Ascertainable.

The first step in certifying a class is adequately defining it, such that there is an "administratively feasible method by which class members can be identified." *See Little v. T-*

*Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012); *Karhu v. Vital Pharm., Inc.,* 621 F. App'x 945, 947 (11th Cir. 2015).

Here, there is no ambiguity in the class definition: whether a person is a member of the class or not is subject to objective standards. First, they must have purchased under the "Buy One, Get One Free" offer, which is coded on sales receipts. Second, they must have made such purchase within the class period, and transaction dates are also included on sales receipts. Third, they must have purchased in the state of Florida, and sales locations are printed on sales receipts. Moreover, Visionworks has detailed sales records which include entries that show (1) whether the purchase was a BOGO, (2) when the purchase was made, and (3) where the purchase was made. Thus, from Visionworks' sales records alone the class can be ascertained; and Visionworks has the last best known addresses for each customer. Indeed, in the *Poteat* litigation, direct notice was sent to every consumer from Ohio and Illinois who, based on Visionworks' internal records, had made a BOGO-Free purchase in the applicable states and during the relevant time period.

### B. The Plaintiff Is a Member of the Class with Standing to Pursue The Class Claims.

The second step in certifying a class is ensuring that the lead plaintiff is a member of it with standing to pursue her claims. *See C-Mart, Inc. v. Metro. Life Ins. Co.,* 299 F.R.D. 679, 687 (S.D. Fla. 2014) (standing requires an injury-in-fact causally connected to the conduct at issue and which is likely to be redressed by a favorable decision).

Mora is a member of the proposed class because she made at least one BOGO-Free purchase in the state of Florida in the class period. *See* Amended Compl. at ¶¶12, 14 (qualifying purchase on May 21, 2015; qualifying purchase on June 2, 2015). And Mora has standing to pursue the class claims: she alleges that she *overpaid* the regular price for a single eyeglasses and did not receive a second eyeglasses free. Thus, she has alleged a concrete, particularized, and actual economic damage that was caused by Visionworks' unlawful conduct—the inflating of list

9

prices by running BOGO-Free offers in violation of the FTC Rules—and which will be redressed in the form of damages (*i.e.,* 40% of the purchase price) if she prevails.

Visionworks previously challenged Mora's standing, arguing she had not alleged an injury-in-fact.  *See* Motion to Dismiss (Doc. 27), pp. 5-12; *but see* Opposition to Motion to Dismiss (Doc. 30), pp. 9-13.  This Court already rejected Visionworks' standing arguments and found instead that "Plaintiff has more than adequately alleged actual damages."  *See* Order Denying Motion to Dismiss (Doc. 31), p. 2 (finding that the "factual allegations are more than sufficient to allow the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged").

## II.   RULE 23(A) REQUIREMENTS

"Class certification is appropriate if the trial court finds, after conducting a 'rigorous analysis,' that the requirements of Rule 23 have been met."  *Dukes,* 131 S. Ct. at 2551.  Rule 23(a) establishes the criteria for class certification: numerosity, commonality, typicality, and adequacy; in addition, the action must meet one of the three types set forth in Rule 23(b).

### A.   The Class Is So Numerous that Joinder Is Impracticable.

There were over 80,000 BOGO-Free transactions during the class period.  *See* Ex. 4, Snail Report, Exhibit 6B (showing 39,457 BOGO-Free transactions in 2014, and 41,525 such transactions in 2015).  The tens of thousands of class members involved in these transactions could not possibly be joined in a single action.  *See Armstead v. Pingree,* 629 F. Supp. 273, 279 (M.D. Fla. 1986) (focus of the inquiry is on whether joinder of proposed class members would be impracticable).  Visionworks has said that it will not challenge numerosity.

### B.   The Case Involves a Common Question or Law or Fact.

It is not necessary "that all questions of law and fact raised by the dispute be common," *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1268 (11th Cir. 2009), but only that there is at least one issue whose resolution will affect all or a significant number of the proposed class members,

*Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009), which is why even a single common question of law or fact will do. *Dukes,* 131 S. Ct. at 2551.

Common questions abound in this case. First, with what frequency and duration did Visionworks make its BOGO-Free offers? The answer will not vary by class member: there is a single, unitary, corporately-derived and uniformly-executed marketing and sales plan. Second, what was Visionworks' true regular price for single eyeglasses? Once again, the answer will not change from one class member to another: there is common evidence of how often and at what prices Visionworks actually sold single eyeglasses (*i.e.,* 40% less than the BOGO-Free list prices). Third, whether a plaintiff can recover as damages the difference between the BOGO-Free list price and the 40% "discount" price alleged to have been the regular price? This matter of law will be decided the same way regardless of which member of the class were to raise it.

Indeed, no complicated trial plan would be needed for this case. *See* Manual for Complex Litigation (Fourth) § 21.141 ("A trial plan assists in identifying the relationship between individual and common elements of proof."). Here, Mora would present evidence in the form of corporate testimony and documents regarding the uniformity of Visionworks' marketing and sales advertising, offers, rules, procedures, and training, as well as the internal marketing calendars and their execution which would show exactly how repeatedly the BOGO-Free offers were run in Florida. *See* Ex. 3, White-Keating Dep. at 118 (Visionworks can produce exhibits to provide precise details on these items).

### C. Mora's Claims Are Typical of Class Members' Claims.

"[I]f the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory," the representative's claims are typical. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) ("typicality ... does not require identical claims or defenses"). And "[d]ifferences in the amount of damages between the class representative and other members does not affect typicality." *Id.*

Here, Mora is a "part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members." *Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000), *citing Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156 (1982). She was solicited under the uniform BOGO-Free offer, during a time period when Visionworks ran that offer so often and for so long that it violated the FTC Rules, giving rise to claims under the Florida Act. There was nothing special or unusual about Mora's transaction: she saw one of the BOGO-Free print ads in the newspaper, visited a nearby store, and was sold eyeglasses pursuant to the offer. *See* Ex. 2, Mora Dep. at 57-58, 61.

### D. Mora and Her Counsel Will Adequately Represent the Class's Interests.

Rule 23 requires that the representative and her counsel will "fairly and adequately protect the interests of the class." *London v. Wal-Mart Stores,* 340 F.3d 1246, 1253 (11th Cir. 2003). Mora has testified that she will stand up for all members of the class and has actively participated in the litigation to that end. *See* Ex. 2, Mora Dep. at 14-15, 96 (testifying that she understands her representative capacity and that her duties are "to not just represent myself, but to the public in Florida that have been to Visionworks and has received the same BOGO-Free offer I did ... to represent everybody, not just myself); *id.* at 15, 93 (testifying that she will present evidence at trial on behalf of the entire class, and that she has a basic understanding of the theories of the case, including that the frequency and duration of the BOGO-Free offers are the central claims), *id.* at 20, 101-102 (she reviewed the complaint, has received frequent updates about the case, and properly prepared for her deposition), *id.* at 23 (she signed a written retainer agreement with counsel, and was not promised anything to serve as class representative); *id.* at 24-25 (she understands that damages theory and the potential value of individual claims); *id.* at 47 (she understands her responsibilities and potential liabilities for bringing the case).

Moreover, she has retained counsel who are not only experienced class action litigators with proven track records, but who have litigated nearly-identical claims against Visionworks in two other states to favorable class-wide settlements. *See* Ex. 1, Legando Decl. at ¶¶1-3, 8; *see*

12

*also* Exhibit 13, Declaration of Brian Warwick. There can be no question that plaintiff's counsel are "qualified, experienced, and generally able to conduct the proposed litigation." *Kirtkpatrick,* 827 F.2d at 726.

### III.  RULE 23(B)(3) REQUIREMENTS

Mora proceeds under Rule 23(b)(3), which requires that the common issues predominate over individual issues, and that the class action mechanism is a superior method of adjudication.

####    A.    A Common Question of Law or Fact Predominates.

"If the liability issue is common to the class, then common questions predominate over individual questions." *Reyes v. BCA Fin. Servs.,* 2018 U.S. Dist. LEXIS 106449, at *42 (M.D. Fla. June 26, 2018), *citing Kirkpatrick,* 827 F.2d at 725. The plaintiff does need to show that "questions will be answered, on the merits, in favor of the class" but only that those questions predominate. *Amgen Inc.,* 133 S. Ct. at 1196.

There is no question that the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997) (this is the core of the predominance inquiry). The *sine qua non*—the essential element—of *any* Florida consumer's claim against Visionworks is that it violated the FTC Rules by running its BOGO-Free offers too often and for too long. The case is not about anything else. The answer to that question will determine the case for each and every class member. And that answer will be presented through generalized proof that will not vary by class member. *See C-Mart,* 299 F.R.D. at 691 (when issues are subject to such common proof, and thus applicable to the class as a whole, common issues predominate), *citing Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997). Here, the class allegations will be proven or disproven in a single stroke—either Visionworks violated the FTC Rules or it did not—such that all class members' consumer-protection claims will succeed or fail together. Moreover, as in *Amgen,* the main question in this case turns on an *objective* test: whether Visionworks' use of the "free" offer every month of the year constitutes a violation of the FTC Rules.

That the amounts of individual damages will vary does not affect the predominance finding, especially where, as here, the proposed damage model is based on a class-wide theory of damages. *See generally Comcast v. Behrend,* 133 S. Ct. 1426 (2013). The alleged economic effect of Visionworks' near-constant use of BOGO-Free offers is that the list prices do not reflect the actual regular prices of single eyeglasses. Indeed, Visionworks only rarely and in negligible amounts sold single eyeglasses that were *not* subject to a discount. The evidence is that Visionworks sold single eyeglasses most regularly subject to a 40% "discount," and that discount was often run as an *alternative* to the BOGO-Free two-eyeglasses offer as a way to keep customers 'on the hook and reel them in.' Further, the alternative offer was not generally advertised, further concealing the true regular price of a single eyeglasses.

Mora's 40% damages theory is one which universally applies to every class member. Thus, although the dollar amount of alleged overpayment may vary from customer to customer, the *fact* of overpayment is universal—and, in this instance, the overpayment was by the *same* percentage. Indeed, to calculate a class member's damage under Mora's theory one need only take the class member's purchase price and multiply it by 40%.

### B. Class Litigation Is Superior to Individual Adjudications.

"[W]hen common issues predominate over individual issues, a class action lawsuit becomes more desirable as a vehicle for adjudicating the plaintiffs' claims," *Nelson v. Mead Johnson Nutrition Co.,* 270 F.R.D. 689, 698 (S.D. Fla. 2010), *citing Klay v. Humana,* 382 F.3d 1241, 1269 (11th Cir. 2004), such that "[c]ourts are generally reluctant to deny class certification based on speculative problems with case management." *Klay* at 1273.

More to the point, there is no question that a single resolution of the liability question, followed by application of the proposed damage model, is vastly and incomparably superior to "whatever other forms of litigation might be realistically available to the plaintiffs." *C-Mart,* 299 F.R.D. at 691, *quoting Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1183-84 (11th Cir. 2010). Here, class members would have very little

interest in controlling individual claims, since the dollar amounts involved are (at most) a couple hundred dollars; indeed, no other class member has filed a case in Florida (and the Ohio and Illinois cases were settled and approved on a class-wide basis). *See Amchem,* 521 U.S. at 617 ("The policy at the very core of the class mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."). The realistic alternative to a class action is no action at all. And Visionworks' marketing and sales practices in the state of Florida will go unchecked.

There will be no problems managing the class action in a single forum, and the concentration of the litigation before one court is highly desirable. *Cf. Vega,* 564 F.3d at 1278. Plaintiff's counsel anticipates that trial of this matter would take less than one week. And if Plaintiff prevails, Visionworks has a system which could readily distribute to class members their individual damages as calculated by a claims administrator post-verdict. *See* Ex. 3, White-Keating Dep. at 127.

## CONCLUSION

Plaintiff's Motion for Class Certification should be granted.

Respectfully submitted,

s/ *Drew Legando*
Drew Legando
Jack Landskroner
Edward S. Jerse
Tom Merriman
LANDSKRONER GRIECO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@lgmlegal.com
   jack@lgmlegal.com
   edjerse@lgmlegal.com
   tom@lgmlegal.com

Brian W. Warwick (0605573)
Janet R. Varnell (0071072)

15

>V<small>ARNELL</small> & W<small>ARWICK</small>, P.A.
>P.O. Box 1870
>Lady Lake, Florida 32158
>T. (352) 753-8600
>F. (352) 504-3301
>E. bwarwick@varnellandwarwick.com
>    jvarnell@varnellandwarwick.com

*Counsel for Plaintiff*

## PROOF OF SERVICE

A copy of this document was served by email on counsel of record on December 17, 2018, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

>Signed by,
>
>s/ *Drew Legando*
>Drew Legando