**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| JENNIFER MORA, *etc.* | Case No. 8:18-cv-00335 |
| Plaintiff, | Judge James S. Moody, Jr. |
| v. | |
| VISIONWORKS OF AMERICA, INC. | |
| Defendant. | |

**DEFENDANT VISIONWORKS OF AMERICA, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF DR. JOHN BURKE**

**INTRODUCTION**

Defendant Visionworks of America, Inc. ("Visionworks") moved to exclude the testimony of Plaintiff's expert, Dr. John Burke, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993), for four independent reasons: (1) Plaintiff's counsel ghostwrote Dr. Burke's report and thus Dr. Burke could not explain the basis for the opinions in the report; (2) Dr. Burke's general background in economics does not make him qualified to testify on the "regular" price of a good; (3) Dr. Burke's methodology to determine the "regular" price of a good and his model for proving classwide damages have never been tested and are otherwise unreliable; and (4) his opinions are not helpful. (Dkt. 60, pp. 9-24).

In response, Plaintiff does not dispute that Plaintiff's counsel primarily wrote the report and conducted all of the data analysis underlying Dr. Burke's opinions. Plaintiff also does not dispute that Dr. Burke could not explain the basis for many of his opinions during his deposition. Plaintiff also concedes that Dr. Burke has no prior experience determining the "regular" price of any product. As a result, Dr. Burke came up with several different definitions of the "regular" price, which, when applied to the facts, caused him to conclude that many of Visionworks' prices, including the list prices and various discounts, would have been the "regular" price at different times during the class period. He then departs radically from economic theory to conclude that 40% off the list price is the "most common regular price," a phrase that he admittedly made up for purposes of this litigation. The biggest problem, however, with his conclusion that 40% off is the "most common regular price" is that it is completely unhelpful in this case. Even if 40% off the list price were the "most common regular price" during the class period (it is not), that fact would not help this Court determine the "regular" price for a putative

1

class member's BOGO transaction because Dr. Burke admits that there were various (and often multiple) "regular" prices on any given day of the class period.

This *Daubert* motion is simple.  Dr. Burke created his opinions for the purposes of this case.  As he repeatedly testified during his deposition:  "John Burke made that up."  Dr. Burke's opinions have no basis in economics, they are untestable, and he could not even demonstrate that his damages model works for Plaintiff Mora, let alone the class.  Dr. Burke should be excluded.

## ARGUMENT

Plaintiff ignores the legal standard in this case.  Plaintiff has the "substantial" burden of showing that all the *Daubert* factors are satisfied, the Court must perform a rigorous analysis of the *Daubert* factors to satisfy its gatekeeping duties, and the Court applies the *Daubert* factors with "greater rigor" where, as here, the expert is a "quintessential expert for hire."  *See Payne v. C.R. Bard, Inc.*, 2014 WL 988754, at *8, n.8 (M.D. Fla. Mar. 13, 2014), *aff'd*, 606 F.App'x 940 (11th Cir. 2015); Dkt. 60, pp. 7-8.  When the proper legal standard is applied, Dr. Burke should be excluded.

### I. PLAINTIFF'S RESPONSE CONFIRMS THAT DR. BURKE IS A MERE MOUTHPIECE OF PLAINTIFF'S COUNSEL.

In its opening brief, Visionworks established that Plaintiff's counsel, not Dr. Burke, ghostwrote the expert report in this case.  (Dkt. 60, pp. 9-14).  Visionworks explained that Dr. Burke's lack of meaningful participation in the drafting of the report is particularly problematic because Dr. Burke was unable to explain the basis for many of the opinions in the report, how the figures in the report were calculated, how the backup data produced with the report was compiled, or how he would apply his damages model to Plaintiff and other class members.  (*Id.*).

In response, Plaintiff concedes that Plaintiff's counsel, not Dr. Burke, primarily wrote the report;[1] that Plaintiff's counsel, not Dr. Burke, sorted the millions of lines of data; and that Dr. Burke merely reviewed summaries of the data prepared by Plaintiff's counsel. (Dkt. 64, pp. 9-12). Plaintiff argues that Dr. Burke devoted 30 or 40 hours to this case and that Dr. Burke signed off on the report. (*Id.*, pp. 9-10). But this is the exact amount of time and conduct of the expert in *Numatics,* who submitted a similarly ghostwritten report and was excluded by the court. *See Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 944 (E.D. Mich. 2014). The key similarity between *Numatics* and this case is that neither expert could explain the materials in the report or the basis for the opinions in the report.[2]

Plaintiff claims that Dr. Burke's lack of data analysis is acceptable because Dr. Burke has "less sophistication with spreadsheets than younger colleagues at his firm and that, at trial, his colleagues could run the electronic data on which he commented." (Dkt. 64, p. 12). Even if Dr. Burke's colleagues could assist him at trial to analyze the data, he needs to understand the data and be able to explain how the data supports his opinions. Further, the time to do that was at his deposition and in response to a *Daubert* challenge, not for the first time at trial.

Plaintiff fails to address the most salient reason for Dr. Burke's exclusion: Dr. Burke was unable to explain the basis for many of the critical opinions and analyses in his report. Visionworks identified at least 18 separate opinions, calculations and analyses in the report that Dr. Burke could not explain. (Dkt. 60, pp. 12-14). Dr. Burke testified that he did not know or

---

[1] Plaintiff never challenges Visionworks' contention that Plaintiff's counsel ghostwrote the report for Dr. Burke. Plaintiff instead claims that "Dr. Burke was deeply involved in this case and the preparation of his opinions (Dkt. 64, p. 10), that he spent 30 or 40 hours on the matter (*id.*, p. 9), and that "his report reflects his opinions" (*id.*, p. 11). In other words, he did some research and came up with some opinions, but counsel wrote the report.

[2] The case cited by Plaintiff, *U.S. v. Kalymon*, 541 F.3d 624, 637 (6th Cir. 2008), is inapposite. *Kalymon* holds that an attorney can reduce an expert's report to writing as "long as the report reflects the actual views of the expert," not the attorney. (Dkt. 64, p. 11). First, *Kalymon* is not the standard in the Eleventh Circuit. Second, it is obvious that Dr. Burke's report does not reflect his own views because he could not explain the basis for many of the opinions and calculations in the report.

could not remember how figures in the report were calculated or how he came to a particular opinion more than 70 times during his deposition. (Dkt. 60, Ex. 1). He admitted that he did not know how the opinions in his report were derived because he did not conduct the underlying data analysis:

> "Q: But you don't know because you didn't do it, right?
>
> A: I don't remember, no.
>
> Q: Your lawyers did it?
>
> A: Lawyers did it, yes sir."

(Dkt. 60, Ex. 1, p. 197).

Dr. Burke also could not apply his own damages model to calculate damages for Plaintiff and two other putative class members because he was unfamiliar with the data. When he tried to run the data through his damages model during his deposition, he concluded that Plaintiff and the two other putative class members should each receive zero damages. (*Id*. pp. 251-56, 261-63).

Visionworks would be severely prejudiced by having to defend against an expert who is the mouthpiece of Plaintiff's counsel and who cannot explain critical opinions in his own report. Dr. Burke should be excluded.

## II.     PLAINTIFF CONCEDES THAT DR. BURKE HAS NO PRIOR EXPERIENCE OPINING ON THE "REGULAR" PRICE OF A CONSUMER PRODUCT.

Visionworks established that Dr. Burke is not qualified to opine on the "regular" price of eyeglasses because Dr. Burke has no prior experience opining on the "regular" price of any consumer good, and he could not explain how his general experience in economics is a sufficient basis for his opinions on the "regular" price of a good. (Dkt. 60, pp. 15-16). Dr. Burke's opinions were based on his personal views of the meaning of the word "regular," rather than on any economic theory. (*Id.*, p. 16). Dr. Burke's application of his uneconomic and unworkable

4

definitions of "regular" price caused him to conclude that nearly every price offered by Visionworks was a "regular" price during various portions of the class period, including the list price. (*Id.*, pp. 16-17).

In response, Plaintiff claims that Dr. Burke's concept of a "regular" price is such "basic economics" that it does not appear in the economic literature; that the FTC guidelines are the source for his methodologies for determining the "regular" price of a good; and that Dr. Burke's methodologies are also based on his experience in economics, his training, and his education. (Dkt. 64, pp. 14, 16).

The argument that Dr. Burke's opinions are such "basic economics" that there would be no support for the opinions in economic literature rings hollow. The lack of peer review literature supporting an opinion is a key factor that justifies exclusion under *Daubert*. Further, if Dr. Burke's opinions are so "straightforward," "basic" and "common sense," then they are not beyond the understanding of the finder of fact and would not be helpful. *See* Fed. R. Evid. 702. Thus, in defending Dr. Burke's qualifications, Plaintiff has essentially conceded that Dr. Burke will not be helpful in this case.

Plaintiff's argument that the FTC guidelines are the source for Dr. Burke's opinions on the "regular" price is misleading. Dr. Burke identified the FTC guideline as an initial source for his definitions of a "regular" price, but he then departed from the FTC guidelines to come up with his own revised definitions. Dr. Burke specifically disavowed the FTC guidelines on multiple occasions during his deposition in favor of his own *ipse dixit*. (Dkt. 60, Ex. 1, pp. 151-53, 183 (disagreeing with FTC guidelines); pp. 205-06 ("significant period of time" is neither FTC guideline nor economic standard, but rather "an arbitrary standard of John Burke"); p. 220 (source he relied on for his opinion that extensive use of BOGO promotions renders the promise

5

of a free second pair illusory is John Burke, not the FTC guidelines)).  Thus, while Dr. Burke cited the FTC guidelines as the original source for the term "regular" price, he ultimately rejected those guidelines in favor of his own definitions of "regular' price.

Plaintiff argues that Dr. Burke's "inconsisten[cies]" with the FTC guidelines were not "fundamental." (Dkt. 64, pp. 18-19).  On the contrary, Dr. Burke ultimately concluded that 40% off the list price is the "most common regular price" because he departed from the FTC guidelines.  When Dr. Burke initially applied the FTC guidelines' definition of "regular" price, he identified multiple Visionworks' prices that were "regular" prices during the class period, testified that a single pair of eyeglasses can have multiple "regular" prices over time, and testified that there can be multiple "regular" prices at any point in time.  (Dkt. 60, Ex. 1, pp. 77-78 (the list price is the regular price in a BOGO transaction); p. 206 (list price is the regular price); pp. 163, 166 (list price that cannot be discounted is a regular price); pp. 163-67 (list price that can be discounted is a regular price if a product is sold at that price at least once each month during the class period); pp. 179-180 (clearance prices are regular prices during the time a product is marked down); p. 155 (40% off single pair is regular price); p. 156 (60% off direct mail discount is regular price); p. 156 ($69.96 clearance price is regular price); p. 192 (60% off single pair discount is regular price); p. 155 (product can have more than one regular price); p. 192 (there can be multiple regular prices at any given point in time)).[3]

Dr. Burke, however, then diverged from the FTC guidelines and economics when he concluded that the "true" regular price is the price that was "most common," which has absolutely no basis in the FTC guidelines or economics. (*Id*., pp. 119, 162, 168, 279).  Dr. Burke

---

[3] Dr. Burke limited his adoption of the FTC guidelines' definition of "regular" price to the development of his chart on page 3 of his report: "The FTC definition was primarily used for that chart on page 3." (Dkt 60, Ex. 1, p. 151).

made up the standard of the "most common regular price" so that he could opine that the 40% off discount should be applied as a common measure of damages for the class.

Plaintiff's mantra that Dr. Burke's opinions in this case are based on his 40 years of experience as an economist also fails. The Eleventh Circuit explained: "If the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). Plaintiff did not offer a single explanation as to how or why Dr. Burke's experience would be helpful in this case. Dr. Burke has never before offered an opinion on the "regular" price of a consumer good, and he admitted that he made up his standards for this case. (Dkt. 60, Ex. 1, pp. 46, 48). Dr. Burke's qualifications in economics generally are not germane to the opinions he offers in this case. *See Montgomery v. Noga*, 168 F.3d 1282, 1302 (11th Cir. 1999) (affirming exclusion of expert because expert did not explain how his expertise was "germane to the issues involved in the case"); *Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*, 254 F. Supp. 2d 1239 (M.D. Fla. 2003) (Moody, J.) (excluding expert who was not qualified in the area of expertise advanced in the case at hand); *Jorquera v. Metro. Cas. Ins. Co.*, 2013 WL 12156451, at *2 (M.D. Fla. Sept. 5, 2013) (expert not qualified to opine as to causation of damages).

Indeed, Dr. Burke readily admitted that his definition of the "regular" price of a good had no basis in economics.

> Q: Is there any source in economics for your definition of regular price, any source you can point to in the literature?
>
> A. Not from memory, no, sir.

(Dkt. 60, Ex. 1, p. 157).

7

In fact, his lack of economic discipline resulted in his adoption of varying, ambiguous definitions of "regular" price throughout his deposition. (Dkt. 60, pp. 16-17, citing Ex. 1, p. 13 ("price that's frequently available"); p. 10 ("the open, available, stated price, known price"); p. 151 ("price at which a single pair of eyeglasses is openly and actively sold to the public"); p. 191 ("most of the time during any arbitrary period"); p. 125 ("more than 1 percent" of sales); pp. 162-63 ("price at which you had at least one sale during a month"); pp. 171-72 (sold for at least 30 out of 90 days)).

In short, regardless of his qualifications in economics generally, Dr. Burke is not qualified to offer his made-up opinions on the "regular" price of a consumer good.

## III. THE COURT SHOULD EXCLUDE DR. BURKE'S OPINIONS BECAUSE THEY ARE UNRELIABLE.

Visionworks established that Dr. Burke's opinions are unreliable because: (1) his methodology to determine a "regular" price has never been tested; (2) his proposed damages model has never been tested and indeed does not work; (3) his methodologies have never been subject to peer review or publication; (4) his methodologies have no known or potential error rate and are not generally accepted in the economic community; (5) his opinions are based only on his *ipse dixit*; (6) he unjustifiably extrapolated from an accepted premise to an unfounded conclusion in selecting a "regular" price; (7) he failed to account for his alternative "regular" prices; and (8) he could not show that his purported expertise in determining a "regular" price was known to reach reliable results. (Dkt. 60, pp. 18-23).

As a threshold matter, Plaintiff fails to respond at all to Visionworks' arguments numbered four through eight, above. Thus, Plaintiff concedes those arguments, and Visionworks should prevail on its *Daubert* motion for this reason alone. Plaintiff then argues that Dr. Burke's opinions are reliable because he has been an economist for 40 years, his opinions are consistent

8

with the FTC guidelines, and that the lack of testing and peer review for his opinions is a red herring.  (Dkt. 64, pp. 18-21).

As discussed in the section above, Dr. Burke's experience in economics does not support his opinions in this case and his opinions are not consistent with the FTC guidelines.  Plaintiff's argument that the fact that Dr. Burke's opinions have not been subject to testing or peer review is a red herring is not credible.  An expert, to be reliable, should meet certain industry indicia of reliability.  The courts have identified testing, peer review, error rates, and publications as low-hanging fruit for reliability evaluations.  This Court cannot ignore those factors because doing so would abdicate the Court's gatekeeping function and its obligation to conduct a rigorous analysis into the admissibility of expert testimony.  The lack of supporting economic literature and the absence of any testing of Dr. Burke's methodology for determining a regular price indicate unreliability.[4]

Finally, Plaintiff claims that Dr. Burke's "method for calculating damages is straightforward and sound" and that the "data is the data."  (Dkt. 64, p. 20).  Dr. Burke's methodologies and damages model are not sound.  Plaintiff cannot plausibly argue otherwise because Dr. Burke never tested his damages model to see if it works.  (Dkt. 60, Ex. 1, p. 247).  His methodology fails to provide a mechanism to choose one "regular" price over another when there are multiple "regular" prices on the same day or to choose among different "regular" prices in different geographic markets in Florida.

Plaintiff claims that "Visionworks does not assert that the method would not work or that damages could not be calculated on a class-wide basis," but that is obviously false.  Visionworks identified several issues with Dr. Burke's damages model and its classwide applicability.  (Dkt.

---

[4] Plaintiff's refrain that Dr. Snail has similar flaws as Dr. Burke fails for two reasons.  First, Dr. Snail actually has experience in this space, while Dr. Burke does not.  Second, Plaintiff did not move to exclude Dr. Snail.

9

60, pp. 4-7). When Visionworks asked Dr. Burke about his damages model during his deposition, he could not figure out which transactions were BOGO transactions, he could not calculate the list price paid by a customer for a complete pair (*i.e.*, the sum of the list prices for the frames, lenses and coatings), and he could not identify the types of additional discounts received by these customers that should be excluded from his damages models. (Dkt. 60, Ex. 1, pp. 251-52, 258). Regardless, it is not Visionworks' burden to disprove Dr. Burke's damages model, it is Plaintiff's burden to show that the model works. *See Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 698 (S.D. Fla. 2014) (denying class certification where plaintiff has not demonstrated proposed methods will be capable of measuring class-wide damages other than "the bald, unsupported assertion that this method will work"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 558 (S.D.N.Y. 2018) (rejecting contention that plaintiff need only establish a "workable" damages model, rather than establish whether the model "actually works"); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *14 (N.D. Cal. Dec. 15, 2014) (rejecting model where plaintiff was only able to prove "the soundness of the methodology" and could not establish that the model reliably measured of damages). Plaintiff failed to satisfy this burden, and there is no record evidence showing that Dr. Burke's damages model works. It does not and Dr. Burke should be excluded for this additional reason.

## IV. THE COURT SHOULD EXCLUDE DR. BURKE'S OPINIONS BECAUSE HIS OPINIONS WOULD NOT ASSIST THE TRIER OF FACT.

Visionworks also demonstrated that Dr. Burke's opinions are not helpful to the trier of fact because: (1) they are not his own; they belong to Plaintiff's counsel; (2) Dr. Burke identified multiple "regular" prices for any given time during the class period, but he offered no meaningful way to choose one "regular" price over another for calculating damages; and (3) Dr.

Burke's inability to explain the basis of his opinions renders his ultimate conclusion useless. (Dkt. 60, pp. 23-24).

Plaintiff never explains how to disentangle the multitude of "regular" prices generated by Dr. Burke's methodology. Even if 40% off were the "most common regular" price across the entire class period, that opinion would not help the Court determine the "regular" price for calculating damages for any particular class member at the time that that class member completed a BOGO transaction. Thus, his opinion is not helpful.

## CONCLUSION

For the reasons set forth above, Defendant Visionworks of America, Inc. requests that the Court exercise its gatekeeping duties under Rule 702 and *Daubert* to exclude Dr. Burke's opinions in their entirety.

Dated: October 7, 2019                    Respectfully submitted,

**VISIONWORKS OF AMERICA, INC.**

Respectfully submitted,

/s/ Daniel R. Campbell
Christopher M. Murphy (*pro hac vice*)
Daniel R. Campbell (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, Illinois  60606
cmurphy@mwe.com
dcampbell@mwe.com
Tel.:   (312) 372-2000
Fax:   (312) 984-7000

Benjamin H. Hill, III (FBN 94585)
Dennis P. Waggoner (FBN 509426)
HILL WARD HENDERSON
101 East Kennedy Boulevard, Suite 3700
Tampa, Florida 33602
Ben.hill@hwlaw.com
dennis.waggoner@hwlaw.com
Tel.:   (813) 221-3900

11

Fax:    (813) 221-2900
*Attorneys for Defendant Visionworks of America, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 7, 2019, I served a copy of the foregoing document upon all counsel of record via email and electronic filing.

                                      /s/ Daniel R. Campbell

                                      Daniel R. Campbell

DM_US 163053520-6.085933.0017