UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER MORA, on behalf of herself and a
proposed class of all similarly-situated
persons,

    Plaintiff,

v.                                                    Case No: 8:18-cv-335-T-30JSS

VISIONWORKS OF AMERICA, INC.,

    Defendant.
_____

## SUMMARY JUDGMENT ORDER

Jennifer Mora bought two pairs of eyeglasses from Visionworks of America, Inc. using a Buy One, Get One Free ("BOGO") promotion. Apparently happy with the deal, she returned a few weeks later and bought two more pairs of eyeglasses using the BOGO promotion, even though she was offered 50% off a single pair. Still apparently happy, she returned to Visionworks again and purchased a single pair of eyeglasses at 60% off.

Mora, though, is no longer happy. Now she is suing Visionworks to get back nearly half of what she paid in the BOGO transactions. That's not because the eyeglasses are poor quality or defective; in fact, Mora readily admits the eyeglasses are worth what she paid. Instead, Mora argues she should have paid 40% less (than the eyeglasses' value) because Visionworks' BOGO promotion is deceptive. The Court disagrees and concludes that because Mora admits she got exactly what she paid for, she has no damages.

## FACTS AND PROCEDURAL HISTORY

Visionworks sells eyeglasses to customers in multiple markets in Florida. Visionworks considers a "complete pair" of eyeglasses to consist of frames, a left lens, a right lens, and optional lens treatments and coatings. When Visionworks offers a promotion, such as BOGO or a percentage discount, the list price of the eyeglass components does not change in advance of the promotion. In other words, Visionworks does not mark up the list prices of the components prior to offering a BOGO promotion.

Mora purchased eyeglasses from Visionworks' Bradenton store on three occasions in 2015 and 2016. In May 2015, Mora saw a Visionworks' advertisement in the newspaper offering BOGO or 40% off a single pair. Once at the store, she decided to use the BOGO offer to get two complete pairs of glasses for her husband, Carl Mora. The BOGO promotion required Mora to purchase the first pair at list price, after which the second pair would be free. Mora paid $628.44 for the two pairs of eyeglasses and a cleaning kit.

Less than two weeks later, she returned to the store to get eyeglasses for herself. She asked about the price for a single pair, and the employee told Mora that she could get a single pair for 50% off. Mora again decided to use the BOGO promotion and got two pairs. In addition to the BOGO promotion, Visionworks applied a $10 off promotion based on another coupon Mora saw in the newspaper. Mora paid $669.93 for the two pairs of eyeglasses in this transaction.

Finally, in 2016, Mora returned to Visionworks to replace a pair of eyeglasses her husband lost. Although she had the option to again use the BOGO discount, she opted to use a 60% off discount on a single pair of eyeglasses. Mora paid 225.98 for the eyeglasses.

2

In total, Mora purchased five pair of eyeglasses from Visionworks, four at BOGO and one at 60% off. Mora admitted the value of the eyeglasses she received in the BOGO transactions was worth the price she paid. (Doc. 61-7, p. 99).

In February 2018, Mora filed this lawsuit alleging that Visionworks was unjustly enriched and violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Specifically, she alleged that Visionworks inflated the price of its eyeglasses over time and that the *regular* price of a single, complete pair of eyeglasses was 40% less than the *list* price. So, she contends, Visionworks' repeated and continuous use of the BOGO promotion, which required the first pair to be purchased at the list price, was deceptive and unfair because the second pair was not actually "free" as advertised.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

3

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

Visionworks moves for summary judgment on Mora's unjust enrichment and FDUTPA claims arguing that she has no actual damages since she admitted that the eyeglasses she received were worth the price she paid.[1] Mora argues that is not the correct measure of

---

[1] Visionworks raised four additional grounds in its summary judgment motion and moved to exclude Mora's expert in a separate motion. Because Visionworks' argument addressed here is dispositive, the Court declines to consider the remaining arguments or the *Daubert* motion.

4

damages. The Court agrees with Visionworks on both claims and concludes it is entitled to judgment in its favor.

**A.  Unjust Enrichment Claim Fails because Mora Got Goods Worth What She Paid**

The elements of a Florida unjust enrichment claim are: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994). Thus, if a plaintiff gives money to a defendant and plaintiff receives something of equal value from defendant in return, there is no unjust enrichment under Florida law.

Mora's unjust enrichment claim fails. Mora admitted the eyeglasses were worth what she paid, so she did not confer a benefit on Visionworks without receiving the same value in return. So the Court concludes it is not inequitable for Visionworks to retain the entire purchase price paid by Mora for the eyeglasses she received, and the Court will enter summary judgment in favor of Visionworks on this claim.

**B.  FDUTPA Claim Fails because Mora Has No Actual Damages**

A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016). Florida courts have interpreted the actual damages element as follows:

> [T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.

5

*Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984) (quoting and adopting the standard set forth in *Raye v. Fred Oakley Motors, Inc.,* 646 S.W.2d 288, 290 (Tex. App. Ct. 1983)). Actual damages do not include consequential, special, or incidental damages. *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 828 (Fla. Dist. Ct. App. 2010).

While the Court is unaware of a case applying *Heller's* "actual damages" definition to a BOGO transaction, there is some guidance in Florida law. In *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204–05 (Fla. Dist. Ct. App. 2012), a Florida appellate court reversed the trial court's class certification ruling after holding that the proposed class representative had no actual damages. The case involved a class suing a hospital under FDUTPA for asserting allegedly illegal hospital liens. *Id.* at 1203. The plaintiff paid the lien and testified that "he had no issues with the services he was provided by the hospital or the amount he was billed for those services." *Id.* at 1204. The appellate court held the plaintiff had not suffered any actual damages, relying on the *Heller* definition of "actual damages." *Id.* at 1205.

In another case, *Reilly v. Chipotle Mexican Grill, Inc.*, 711 F. App'x 525 (11th Cir. 2017), the Eleventh Circuit Court of Appeals considered whether a plaintiff suffered actual damages in a FDUTPA claim. The plaintiff asserted a class action arguing that Chipotle's advertisement that its food was GMO-free was deceptive because some of the animals were given feed containing GMOs. *Id.* at 527–28. Chipotle argued the plaintiff suffered no actual damages, and the district court entered summary judgment for Chipotle. *Id.* at 528. The Eleventh Circuit affirmed summary judgment for Chipotle, holding the plaintiff suffered no actual damage since she paid the same price for meals before and after the GMO advertising began, and because she failed to introduce evidence that a non-GMO burrito is worth more

6

than a GMO-burrito. *Id.* at 529–30. The Eleventh Circuit also noted that whether Chipotle's advertising was deceptive was irrelevant since the plaintiff suffered no actual damages. *Id.* at 530.

Applying the *Heller* "actual damages" definition to Mora's claim and considering cases applying the definition, this Court concludes Mora did not demonstrate actual damages. Mora needed to introduce evidence that the value of the pairs of eyeglasses she received was less than the amount she paid in the BOGO transactions. Not only did Mora fail to present evidence showing that eyeglasses were not worth what she paid, she testified to the exact opposite. Because Mora failed to demonstrate actual damages, her claims necessarily fail.

While not binding, the Court notes this outcome is in accord with all the consumer fraud BOGO cases of which this Court is aware.[2] For instance, in *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), the Seventh Circuit Court of Appeals affirmed dismissal of a consumer fraud claim involving a "buy one shirt, get two shirts free" discount. After explaining that the consumer fraud statute at issue required the plaintiff to have actual damages, the Circuit Court held,

> Central to Camasta's argument is the claim that the advertised "sale prices" were in fact just the normal or regular retail prices being promoted as temporary price reductions. … However, Camasta failed to provide any evidence that he paid more than the actual value of the merchandise he received.

*Id.* at 739.

---

[2] Mora relies on *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), to argue she has actual damages under consumer fraud statutes. But as the Ninth Circuit later explained, *Hinojos* is a standing case and, therefore, inapposite to the issue before the Court. *See Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x 404, 406 (9th Cir. 2018).

In *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-CV-756, 2014 WL 4129576 (S.D. Ohio Aug. 19, 2014), the plaintiffs alleged the defendant's buy one suit, get three suits free promotion violated Ohio's consumer fraud protections. The plaintiffs' claimed this promotion was deceptive, arguing "[b]ecause suits are almost never sold at the 'purported regular price,' that price is illusory and it is the 'sale price' that is the true regular price." *Id.* at *4 (internal quotations edited for clarity). The district court dismissed the class claims, explaining:

> Under these circumstances, and even assuming that plaintiffs are able without unreasonable speculation to assign a dollar amount to their claimed actual damages, recognition of plaintiffs' claim would leave each plaintiff with four suits that are worth, collectively, no less than the amount paid for them, plus some additional amount in claimed damages. It is clear to this Court that the *Amended Complaint* fails to allege actual injury or damage as a result of the alleged OCSPA violation.

*Id.* at *7.

Foreign courts have applied a similar analysis to non-BOGO marketing schemes, much like the *Reilly* and *Baker* cases. In *Belcastro v. Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 WL 744596 (S.D.N.Y. Feb. 23, 2017), the plaintiff "attempted to shoehorn his 'But-I-Thought-I-Was-Getting-A-Bargain' claims into Florida's consumer protection statute and common law torts." *Id.* at *1. The district court dismissed the FDUTPA claim after concluding the plaintiff had no actual damages because the value of the goods—in that case, shirts—was worth the amount the he paid. *Id.* at *6. *See also Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017) (affirming dismissal of a claim premised on a deceptive "compare at" tag price on a sweater because there was no allegation of an actual injury based solely on plaintiff's belief as to the perceived value); *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 681 (6th Cir. 2017)

8

(affirming dismissal of consumer fraud action for lack of damages where the plaintiff "got what he paid for: a $27 item that was offered as a $27 item and that works like a $27 item.").

Common to all these cases is the requirement that a plaintiff bringing a consumer fraud action must show that what she got is worth less than she paid. While Mora attempts to frame the issue differently—arguing the deal she got is not as much of a bargain as she thought—the Court sees no reason to depart from the well-established measure of actual damages. So the Court will enter summary judgment in favor of Visionworks.

## CONCLUSION

Mora got what she paid for. Because she got what she paid for, she has no damages and Visionworks was not unjustly enriched. No deceptive advertising or marketing by Visionworks can change those facts. Without being able to show that the value of what she received is less than what she paid, Mora cannot succeed on her FDUTPA and unjust enrichment claims. So Visionworks is entitled to summary judgment in its favor.

Accordingly, it is ORDERED AND ADJUDGED that:

1. Defendant Visionworks of America, Inc.'s Motion for Summary Judgment (Doc. 61) is GRANTED.

2. All pending motions are denied as moot.

3. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 31st day of October, 2019.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record